**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
**KINGVISION PAY-PER-VIEW, LTD.**
as Broadcast Licensee of the **AUGUST 13, 2005**
**RAHMAN/BARRETT** Program,

                             **Plaintiff,**              **REPORT AND**
                                                              **RECOMMENDATION**
             -against-                                  **06-CV-1117 (FB)**

**ALEXANDER PEREZ,** Individually and d/b/a QUIKUTS
a/k/a QUICKUTS, a/k/a QUICKCUTS, **and QUIKUTS,**
a/k/a QUICKUTS, a/k/a QUICKCUTS**,**

                             **Defendants.**
-------------------------------------------------------------------X
**GOLD, S., U.S.M.J.:**

## Introduction

Plaintiff, Kingvision Pay-Per-View, Ltd. ("Kingvision"), brings this action alleging that defendants, Alexander Perez, individually and doing business as Quikuts, and Quikuts, unlawfully intercepted and misappropriated a closed circuit television exhibition of a boxing match held on August 13, 2005 between Rahman and Barrett (the "event") in violation of the Federal Communications Act of 1934, codified as amended, 47 U.S.C. §§ 553 and 605. Compl. ¶¶ 1, 18-36. More specifically, plaintiff alleges that defendants intercepted and received the event without paying the required fees, and displayed it to individuals at Quikuts. *Id*.

Upon plaintiff's application and in light of defendants' failure to appear in or otherwise defend this action, the Clerk of the Court noted the default of defendants on June 27, 2006. Docket Entry 9. On September 20, 2006, the Honorable Frederic Block entered a default judgment and referred this case to me for report and recommendation on the issue of damages. Docket Entry 10.

## Facts

Kingvision owns the distribution rights to the event, which was broadcast via closed circuit television and encrypted satellite signal on August 13, 2005. Compl. ¶ 15; Affidavit of Donna K. Westrich, Vice-President of Kingvision ("Westrich Aff.") ¶ 3. Plaintiff entered into agreements with various commercial establishments in New York, allowing them to exhibit the event to their patrons in exchange for a fee. Compl. ¶¶ 16, 17; Westrich Aff. ¶ 3. Defendants did not contract with plaintiff to broadcast the event legally. Westrich Aff. ¶ 6.

Plaintiff hired an investigative agency, Signal Auditing, Inc., to visit various commercial establishments in the New York City area on the night of August 13, 2005, and attempt to identify establishments that were unlawfully exhibiting the event. *Id*. at ¶ 4. An investigator witnessed the event being displayed on a television set at Quikuts. Westrich Aff. ¶ 7; Piracy Affidavit of Thomas Larkin ("Larkin Aff."), Westrich Aff. Ex. D. Plaintiff asserts that defendants used unauthorized decoding equipment to intercept the event without paying a fee to plaintiff. Compl. ¶¶ 18, 19; Westrich Aff. ¶ 10.

## Discussion

In his Memorandum and Order dated September 14, 2006, Judge Block determined that the allegations of plaintiff's complaint clearly establish defendants' liability for a violation of 47 U.S.C. § 605(a), and that relief should be awarded solely pursuant to that statute. Docket Entry 10. Accordingly, I proceed to the issue of damages.

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *Greyhound Exhibitgroup Inc., v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080, 113

S. Ct. 1049 (1993). Rather, claims for damages generally must be established with evidence, and the defendant must be afforded the opportunity to contest the amount claimed. *Id*. In this way, a court may ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* FED. R. CIV. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40. In this case, defendants have not submitted any opposition to plaintiff's demand for an award of statutory damages. Accordingly, a hearing is not warranted.

A claimant who has established liability under § 605(a) may elect between actual damages plus defendant's profits, if any, or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i)(II). Where a party elects to recover statutory damages, it may recover an award from $1,000 to $10,000 for each violation of § 605(a). 47 U.S.C. § 605(e)(3)(C)(i). An additional $100,000 in enhanced damages is available where the violation was willful and was committed for commercial advantage or financial gain. 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff in this case seeks an award of statutory damages, including an enhanced award based on defendants' willfulness, and attorneys' fees and costs. Pl. Mem. pp. 6-13.

The amount of damages to be awarded pursuant to § 605 rests in the sound discretion of the court. 47 U.S.C. § 605(e)(3)(C)(i)(II) (providing for an award "as the court considers just"); *see also Time Warner Cable of New York City v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997). A common method courts use to determine an appropriate damages award is to assess a per person charge based upon the number of individuals in the establishment at the

3

time of the broadcast. *See*, *e.g.*, *id*. (awarding damages on a per patron basis); *Cablevision Sys. Corp. v. 45 Midland Enters., Inc.*, 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (same). Plaintiff has submitted evidence that approximately 25 individuals were present during the illegal broadcast.[1] Larkin Aff. Furthermore, plaintiff states that the residential price for the broadcast was $25 or $50. Westrich Aff. ¶ 10. I recommend that plaintiff be awarded $50 per individual present at Quikuts during the broadcast. *See*, *e.g.*, *Kingvision Pay-Per-View, Ltd. v. Lalaleo*, 429 F. Supp. 2d 506, 514 (E.D.N.Y. 2006) (awarding $50 per patron); *Taco Rapido Rest.*, 988 F. Supp. at 111 (same); *45 Midland Enters.*, 858 F. Supp. at 45 (same). Accordingly, damages should be awarded in the amount of $1,250.

Plaintiff also seeks an enhanced damages award pursuant to § 605(e)(3)(C)(ii), asserting that defendants' acts were willful and committed for financial gain. The Supreme Court has defined willfulness as "disregard for the governing statute and an indifference for its requirements." *Transworld Airlines, Inc. v. Thurston*, 469 U.S. 111, 126-27, 105 S. Ct. 613, 624 (1985) (*quoted in Cablevision v. Lokshin*, 980 F. Supp. 107, 114 (E.D.N.Y. 1997)). The broadcast of an event without authorization is a deliberate act, and thus establishes willfulness. *See Taco Rapido Rest.*, 988 F. Supp. at 111 ("In order for [defendant] to receive the closed-circuit broadcast, it had to have engaged in some deliberate act. . . ."); *Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"). *See also* Westrich Aff. ¶ 10.

---

[1] Plaintiff's investigator took 3 separate head counts in the 1 minute that he was in Quikuts. Larkin Aff. He counted 20 people on the first count and 25 people on the subsequent 2 counts. *Id*.

Plaintiff's showing that defendants' acts were committed for commercial advantage or financial gain is not particularly strong. Plaintiff's boilerplate allegations that the broadcast of the event "most likely led to an increased number of patrons and, thus, an increase in profits" is not substantiated by any evidence. Pl. Mem. p. 3. *See also* Larkin Aff. In fact, the investigator's report contradicts plaintiff's assertion that defendants' actions were financially motivated. First, the investigator's report suggests that Quikuts, apparently a barber shop, was closed for business at the time of the broadcast, which was approximately 9:45 at night. *Id*. Indeed, the investigator notes in his report that the middle of the shop was cleared of barber chairs so that temporary chairs could be set up to watch the event. *Id*. Additionally, the report does not indicate that defendants received any money as a result of the illegal broadcast. *Id*. The investigator did not pay any cover charge to enter, and unlike restaurants that show pirated broadcasts and profit from serving food and drinks, the investigator's report here contains no indication that defendants charged for any food or drinks that may have been available at the barber shop. *Id*. Although the "Piracy Affidavit" form completed by the investigator asks for a description of any bartender, the investigator left that portion of the form blank. *Id.* In sum, plaintiff has failed to establish that the defendants profited at all or derived any revenue by showing the event.

Nonetheless, the legislative history of § 605 states that Congress "intended that the term 'direct or indirect commercial advantage or private financial gain' be interpreted broadly." 130 Cong. Rec.§ 14286 (daily ed. Oct. 11, 1986) (statement of Sen. Packwood), *reprinted in* 1984 U.S.C.C.A.N. 4742, 4750, 1984 WL 37497. I therefore conclude that, because the event was shown in a commercial premises to a fairly large group of people, a modest award of enhanced damages would be proper.

Courts apply a variety of factors in determining whether and to what extent a defendant's willful conduct justifies enhanced damages. These factors include: (i) repeated violations; (ii) significant actual damages suffered by plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks. *Kingvision Pay-Per-View, Ltd. v. El Rey Del Bistec Y Caridad, Inc.*, 2001 WL 1586667, at *2 (S.D.N.Y. Dec. 12, 2001).

None of the factors are present in this case. Plaintiff has presented no evidence of other violations by these defendants. Pl. Mem. p. 5. With respect to the second factor, plaintiff's actual damages amount to no more than $750, the amount it could have charged defendants for a licensing fee to broadcast the event at Quikuts; even this amount assumes that defendants would have paid to exhibit the event if they were otherwise foreclosed from showing it. *See* Westrich Aff., Ex. B. Finally, there is no evidence that defendants advertised the event or reaped any monetary gain from showing it.

Taking all of these factors into account, I recommend that plaintiff be awarded an enhancement of three times the damages award, or $3,750. *See J&J Sports Prods., Inc. v. Drake*, 2006 WL 2927163 (E.D.N.Y. Oct. 11, 2006) (awarding a factor of three times for willfulness against a barber shop), *Kingvision Pay-Per-View, Ltd. v. Hansen*, 2004 WL 744230 (S.D.N.Y. Apr. 5, 2004) (awarding a factor of five times for willfulness against a barber shop); *Entm't by J&J, Inc. v. AJ's Barber Shop & Unisex Salon*, 2003 U.S. Dist. LEXIS 22492 (S.D.N.Y. Dec. 11, 2003) (awarding a factor of two and a half times for willfulness); *Top Rank, Inc. v. Ortiz*, 2003 WL 1960211 (S.D.N.Y. Mar. 27, 2003) (awarding double damages for willfulness); *but see J & J Sports Prods., Inc. v. Vasquez*, 2006 WL 2583740, at *5 (E.D.N.Y. Sept. 7, 2006) (declining to

award any statutory enhancement where the broadcast occurred in a barber shop with only four individuals present and there was no evidence of any financial gain). This amount is sufficient both to redress the harm caused by defendants' activities, and to deter future violations, particularly where, as here, there is no indication that defendants received any financial gain as a result of the illegal broadcast.

Plaintiff also seeks to recover its attorney's fees and costs. An award of fees and costs is mandatory pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). In this Circuit, all claims for attorney's fees must be supported by contemporaneous time records that show, "for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Plaintiff seeks to recover $992.75 in attorney's fees for 4.12 hours of attorney work and 2.25 hours of paralegal work. Affidavit of Julie Cohen Lonstein ("Lonstein Aff.") ¶ 4. This amount appears to be reasonable and is supported by contemporaneous time records.

Finally, plaintiff seeks to recover costs in the amount of $800, including $250 for the filing fee, $200 for service, and $350 for investigative costs. Lonstein Aff. ¶ 3. Plaintiff is entitled to recover the costs associated with filing and service. *See Kingvision v. Autur*, 426 F. Supp. 2d 59, 66 (E.D.N.Y. 2006). Courts are divided, however, over whether the costs of an investigator are recoverable pursuant to 47 U.S.C. § 605(e)(3(B)(iii). *Compare Autar*, 426 F. Supp. 2d at 66-68 *with Kingvision Pay-Per-View Ltd. v. Cazares*, 2006 WL 2086031 at * 6, (E.D.N.Y. July 25, 2006), *and Drake,* 2006 WL 2927163 at * 7. While I find the analysis in *Autar* to be persuasive, I need not decide the issue for purposes of this case because plaintiff's showing in support of its application for investigative costs is inadequate. "In order to recover investigative costs a plaintiff must make a showing similar to that required to recover attorneys'

fees." *Autar*, 426 F. Supp. 2d at 67. Here, plaintiff seeks to recover $350 it claims to have paid to its investigator, but the investigator states in his affidavit that he spent only 1 minute in the barber shop. Larkin Aff. Plaintiff offers no rationale for an award of $350 for 1 minute of investigative work. I therefore recommend that this aspect of plaintiff's claim for fees and costs be rejected. *Autur*, 426 F. Supp. 2d at 67; *Vasquez*, 2006 WL 2583740, at *6; *Int'l Cablevision, Inc. v. Noel*, 982 F. Supp. 904, 917-18 (W.D.N.Y. 1997).

### Conclusion

For the foregoing reasons, I respectfully recommend that default judgments be entered against the defendants in the total amount of $6,442.75, consisting of $5,000 in statutory damages and $1,442.75 in fees and costs.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Chambers of the Honorable Frederic Block within ten days of receiving this Report and Recommendation and, in any event, on or before April 27, 2007. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

Plaintiff is hereby directed to serve copies of this Report and Recommendation upon defendants at their last known addresses, and to file proof of service with the Clerk of the Court.

_____/s/_____
**Steven M. Gold**
**United States Magistrate Judge**

**Brooklyn, New York**
**April 9, 2007**

*U:\eoc 2007\Damages Inquests\perez 040607.wpd*

8